# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**RUDOLPH WARD,[1]**

      **Plaintiff,**

           **Case No. 2:18-cv-13675**

    **v.**               **Magistrate Judge Norah McCann King**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rudolph W. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 10, 2015, Plaintiff filed his application for benefits, alleging that he has been disabled since March 1, 2014. R. 68, 79, 174–75. The application was denied initially and upon reconsideration. R. 90–98. Plaintiff sought a *de novo* hearing before an administrative law judge

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

("ALJ"). R. 101. ALJ Meryl L. Lisek held a hearing on June 28, 2017, at which Plaintiff, who

was represented by counsel, appeared and testified, as did a vocational expert. R. 26–67. In a

decision dated November 15, 2017, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act at any time from March 1, 2014, Plaintiff's alleged disability

onset date, through December 31, 2015, the date on which Plaintiff was last insured for benefits.

R. 11–20. That decision became the final decision of the Commissioner of Social Security when

the Appeals Council declined review on July 17, 2018. R. 1–6. Plaintiff timely filed this appeal

pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 29, 2023, Plaintiff consented to

disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and

Rule 73 of the Federal Rules of Civil Procedure. ECF No. 24.[3] On March 30, 2023, the case was

reassigned to the undersigned. ECF No. 25. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   THE ALJ DECISION AND APPELLATE ISSUES

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2015. R. 13. Plaintiff was 57 years old on March 1, 2014, his alleged disability onset date. R. 69, 80. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date on which he was last insured for benefits. R. 14.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes; diabetic polyneuropathy; congestive heart failure; osteoarthritis; obesity; and kidney disease. R. 14. The ALJ also found that Plaintiff's diabetic retinopathy was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 14–15.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 15–19. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a telephone solicitor. R. 19. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 1, 2014, his alleged disability onset date, through December 31, 2015, the date on which he was last insured. R. 19–20.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 30. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 32.

## IV.    DISCUSSION

### A.    Step Three

Plaintiff challenges the ALJ's finding at step three, arguing that the ALJ failed to consider all of Plaintiff's severe impairments, particularly diabetes and obesity, in combination for purposes of medical equivalence. *Plaintiff's Moving Brief*, ECF No. 30, pp. 6–18. For the reasons that follow, this Court disagrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of any of the impairments in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones v. Barnhart,* 364 F.3d 501, 504 (3d Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered

8

the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Jones*, at 505.

In the present case, the ALJ determined at step two that Plaintiff suffered the severe impairments of diabetes; diabetic polyneuropathy; congestive heart failure; osteoarthritis; obesity; and kidney disease. R. 14 (finding further that Plaintiff's diagnosed impairment of diabetic retinopathy was not severe). The ALJ went on to determine at step three that Plaintiff "did not have an impairment *or combination of impairments* that met or medically equaled" a listed impairment, R. 14 (emphasis added), including Listings 1.02, 4.02, 6.05, 9.00, and 11.14, reasoning as follows:

> In determining whether the claimant's physical impairments meet or equal the listings, the undersigned has considered listings 1.02, 4.02, 6.05, 9.00 and 11.14. The medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, *individually or in combination*.

> The medical record does not contain medically acceptable imaging evidence of joint space narrowing, bony destruction or ankylosis in the upper or lower extremities, resulting in the inability to ambulate effectively or perform fine and gross movements effectively, as defined in l.00B2b and c.

> Examinations revealed stable gait with abnormalities, but no inability to walk (Exhibit 2F/5; 5F/4). The claimant also had normal motor strength in the upper and lower extremities (Exhibit 4F/l, 9). As such, the claimant's osteoarthritis does not meet or medically equal listing 1.02.

> Echocardiogram in September 2014 revealed an estimated left ventricular ejection fraction of 42% with mild global hypokinesis. The claimant had a normally sized left and right atrium (Exhibit 4F/22). Therefore, the claimant's congestive heart failure does not meet or medically equal the requirements of listing 4.02.

> Renal ultrasound conducted in February 2015 revealed no abnormalities (Exhibit 13F/16). Furthermore, blood tests do not reveal serum creatinine of 4mg/dL or greater, creatinine clearance of 20 ml/minute or less, or an eGFR of 20

ml/min/1.73m2 or less (Exhibit 19F/12, 24). Therefore, the claimant's kidney disease does not meet or medically equal the requirements of listing 6.05.

The medical evidence does not demonstrate that the claimant's diabetes has caused an impairment in any other body system to meet or medically equal a listing. *The claimant's diabetes, though causing more than minimal limitations, has been conservatively treated and has not resulted in end-organ complications. The record does not contain evidence of diabetic ketoacidosis, chronic hyperglycemia, or seizures and/or loss of consciousness secondary to severe hypoglycemia (Exhibit 2F/2; 15F/3).* Therefore, the claimant's diabetes does not meet or equal any listing by way of 9.00B5.

The medical evidence does not contain evidence of disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. Nor does the record demonstrate any marked limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself  As noted above, the claimant has a generally stable gait, and demonstrates full strength in all extremities. There is also little evidence of record and few complaints concerning any significant and ongoing psychological abnormalities (Exhibit 4E). Therefore, the claimant's diabetic polyneuropathy does not meet or medically equal the requirements of listing 11.14.

*Furthermore, in accordance with SSR 02-1p, the undersigned finds that the claimant's obesity does not increase the severity of any co-existing or related impairments to the extent that the combination of the impairments meets the requirements of any listing. Nor is there any evidence of record that demonstrates the claimant's obesity itself medically equals the requirements of any listed impairment.*

R. 14–15 (emphasis added). The Court finds no error with the ALJ's reasoning in this regard and finds that substantial evidence supports the ALJ's determination at step three.

Plaintiff, however, challenges the ALJ's reasoning, arguing that the ALJ did not combine all severe impairments and compare the joint effect of all impairments against the Listings to determine medical equivalence. *Plaintiff's Moving Brief*, ECF No. 30, pp. 6–15 (citing, *inter alia*, *Torres v. Comm'r*, 279 F. App'x 149, at *154 (3d Cir. 2008); *Ron L. v. Comm'r of Soc. Sec.*, No. CV 20-10081 (KM), 2022 WL 154410, at *1 (D.N.J. Jan. 18, 2022)). Plaintiff's argument is not well taken. As detailed above, the ALJ expressly stated at step three that Plaintiff

did not have an impairment or "combination of impairments" that met or medically equaled a listed impairment and noted, *inter alia*, that "no acceptable medical source" had found medical equivalence "in severity to the criteria of any listed impairment, individually or in combination." R. 14. Where the ALJ explicitly considered Plaintiff's impairments "singly and in combination", *id.*, there is "no reason not to believe" that the ALJ did so. *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008); *see also Gonzalez v. Comm'r of Soc. Sec.*, No. CV 19-21276, 2021 WL 5027986, at *4 (D.N.J. Oct. 28, 2021) (affirming denial of benefits where "the ALJ expressed at the beginning of his step three discussion that he considered Plaintiff's impairments in combination . . . and there is "no reason not to believe" that the ALJ did so") (internal quotation marks and citations omitted).

Moreover, as set forth above, the ALJ did not simply conclude, without explanation, that Plaintiff's impairments, considered singly or in combination, failed to meet or medically equal a Listing. Instead, the ALJ expressly addressed each of Plaintiff's impairments, including diabetes and obesity, cited to the relevant regulations and listings, and evaluated the relevant medical evidence—with specific citation to the record—before she concluded that Plaintiff's impairments, whether considered alone or in combination, did not meet or medically equal a listed impairment. R. 14–15. Notably, as the Court has already noted, the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis"; the decision simply must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505. The ALJ's analysis in this case therefore provides sufficient discussion of the record and relevant authority for the Court to conclude that substantial evidence supports the ALJ's finding at step three. Accordingly, in light of the ALJ's thorough discussion, Plaintiff's reliance on *Torres* and *Ron L.*—cases in which the ALJs'

11

analyses were conclusory and deficient—is misplaced. *See Torres*, 279 F. App'x 149, 152 (finding the ALJ's "analysis is conclusory and inadequate" where the "ALJ's entire combination analysis consisted of one cursory paragraph" that simply identified the severe impairments and concluded that the evidence "'does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4'"); *Ron L.*, 2022 WL 154410, at *5 (remanding action where, *inter alia*, the ALJ "failed to mention Plaintiff's migraine headaches at all at step three, and only cursorily referenced Plaintiff's chronic pain in relation to Plaintiff's mental impairments"); *see also Velez v. Comm'r of Soc. Sec.*, No. CV 19-08182, 2020 WL 4435412, at *9 n.5 (D.N.J. Aug. 3, 2020) ("Unlike in that case [*Torres*, where the ALJ's entire analysis was "one cursory paragraph" with no development of the record or explanation as to the ALJ's medical determinations], the ALJ in this case rendered a decision that indicates that the ALJ engaged in a thorough evaluation of the pertinent medical and other evidence."); *Lindemeyer v. Saul*, No. CV 19-8781, 2020 WL 3397287, at *9 (D.N.J. June 19, 2020) ("To be clear, the Court does not hold that an ALJ adheres to the obligations under the pertinent regulations, if he or she merely indicates that a claimant's impairments have been considered together or in combination. Rather, a court should give credit to such statements when the ALJ renders a decision, such as the one here, that allows for a meaningful judicial review, on the basis of having provided a sufficient explanation of the medical record evidence, and the reasoning behind the ALJ's determinations."); *cf. Chubb v. Saul*, No. 5:20-CV-00833, 2022 WL 44007, at *3 (E.D. Pa. Jan. 5, 2022) ("Considering the ALJ's reliance on the Function Report, medical records on both mental and non-mental impairments, and his discussion of Chubb's limitations based on non-mental impairments, this Court finds Chubb has not given a reason to disbelieve that the ALJ considered a combination of

impairments, as the heading [that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of the one of the listed impairments] suggests."); *C.S. v. Comm'r of Soc. Sec.*, No. CV 19-20845, 2021 WL 5195702, at *3 (D.N.J. Nov. 9, 2021) (stating that *Torres* and *Burnett*, 220 F.3d 112, together "stand for the proposition that the ALJ must explain why she believes a claimant's impairments do not meet any of the Listings rather than offer merely conclusory statements" and rejecting the claimant's argument that the ALJ did not sufficiently explain her reasoning at step three where "the ALJ's decision indicates she sufficiently considered the evidence and explained her findings and, therefore, the decision is amenable to judicial review").

Plaintiff nevertheless insists that the ALJ failed to meaningfully consider Plaintiff's obesity at step three and at subsequent steps in accordance with SSR 02-1p. *Plaintiff's Moving Brief*, ECF No. 30, pp. 15–18. This Court disagrees. In 2000, the Commissioner removed obesity as a "listed impairment," but the Court of Appeals for the Third Circuit has recognized that this action "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). "To the contrary, the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id.* "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id.* (citations omitted); *see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a

13

Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.").[4]

SSR 02-1p provides in relevant part as follows:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

. . . .

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," . . . satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function. . . .

We may also find that obesity, by itself, is medically equivalent to a listed impairment. . . . For example, if the obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A or 101.02A, and we will then make a finding of medical equivalence. . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the

---

[4] Most recently, SSR 19-2p rescinded and replaced SSR 02-1p, effective May 20, 2019, SSR 19-2p, 2019 WL 2374244, at *5 (May 20, 2019), after the ALJ in this case issued her decision on November 15, 2017, and after the Appeals Council denied review on July 17, 2018.

increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings. [Footnote omitted.]

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

SSR 02-1p, 67 Fed. Reg. 57859-02. Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016)  (quoting *Jones,* 364 F.3d at 505). However, "[c]onclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Diaz*, 577 F.3d at 504.

In this case, the ALJ specifically discussed Plaintiff's obesity at step two, noting as follows:

In accordance with Social Security Ruling 02-1p, the undersigned has considered the impact obesity has on limitation of function, including the claimant's ability to perform routine movement and necessary physical activity within the work environment.  The claimant's obesity is documented throughout the record. For example, in Exhibit 13F/21, he is noted to be 6'6" and 318 pounds, for a body mass index (BMI) of 36.74. Although the claimant's weight has fluctuated during the relevant period, the amount of fluctuation is not significant to alter these findings. Given the claimant's height and weight, he is considered obese in accordance with

15

the Clinical Guidelines established by The National Institutes of Health. *Obesity is generally the result of a combination of factors, and the combined effects of obesity with other impairments may be greater than might be expected without obesity.* The undersigned has considered the potentially augmentative effects of this impairment and incorporated them into the analysis above, *finding that the claimant's obesity likely exacerbates the negative effects stemming from his other physical impairments* (SSR 02-lp).

*Id*. (emphasis added). At step three, and as previously noted the ALJ expressly referenced the guidelines set forth in SSR 02-1p and concluded that Plaintiff's obesity, when considered in combination with his other impairments, neither meets nor medically equals any listing, reasoning as follows:

Furthermore, in accordance with SSR 02-1p, the undersigned finds that the claimant's obesity *does not increase the severity of any co-existing or related impairments to the extent that the combination of the impairments meets the requirements of any listing*. Nor is there any evidence of record that demonstrates the claimant's obesity itself medically equals the requirements of any listed impairment.

R. 15 (emphasis added). As previously discussed, the ALJ also considered at step three Listings 1.02, 4.02, 6.05, 9.00B5, 11.14, in connection with Plaintiff's severe impairments of osteoarthritis, congestive heart failure, kidney disease, diabetes, and diabetic polyneuropathy, respectively. R. 15; *see also* SSR 02-1p (providing, *inter alia*, that "obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems").

Furthermore, at step four, the ALJ went on to consider, *inter alia*, Plaintiff's ability to perform activities of daily living, his stable gait, his 5/5 strength in all extremities with normal deep tendon reflexes, his reported back pain, the absence of joint pain or swelling, and the presence of foot hypermobility. R. 17. The ALJ also expressly considered Plaintiff's obesity in combination with his other impairments and limitations flowing from those impairments, reasoning as follows:

16

> As such, the record as a whole is generally consistent with the claimant's reported ability to perform his activities of daily living independently, and does not suggest physical limitations so severe as to preclude work. Given the claimant's history of pain and numbness secondary to polyneuropathy and osteoarthritis, in a setting of *obesity*, *diabetes*, and kidney disease, the undersigned has accordingly limited the claimant to sedentary work, taking into consideration the claimant's reported fatigue and lightheadedness.

R. 17–18 (emphasis added).

In short, reading the ALJ's decision as a whole, *see Jones*, 364 F.3d at 505, the ALJ properly considered Plaintiff's obesity at step three and at subsequent steps when she recognized Plaintiff's obesity as a severe impairment, recognized that she must consider the effect of Plaintiff's obesity on Plaintiff's other impairments, found that none of Plaintiff's impairments, whether considered singly or in combination, met or equaled a listed impairment, and specifically and in detail considered Plaintiff's impairments of osteoarthritis, congestive heart failure, kidney disease, diabetes, and diabetic polyneuropathy—and the limitations imposed by those impairments—in determining his RFC. R. 14–17; *see also Diaz*, 577 F.3d at 504; *Woodson*, 661 F. App'x at 765–66; SSR 02-1p. Notably, Plaintiff has not identified any medical evidence that his obesity imposes greater limitations than those found by the ALJ. *See generally Plaintiff's Moving Brief*, ECF No. 30.[5]

Moreover, even if the Court assumes for the moment that Plaintiff's assertion that the ALJ's discussion was deficient under *Diaz*, which it is not, Plaintiff has not shown how any error in this regard was harmful. Plaintiff does not explain how his obesity, individually or in combination with any other impairment, meets or medically equals a listed impairment nor does he identify any specific functional limitation caused by his obesity. *See generally Plaintiff's Moving Brief*, ECF No. 15. Notably, neither the ALJ nor the Court will "make general

---

[5] The Court considers the RFC determination in more detail in the next section.

assumptions about the severity or functional effects of obesity combined with another

impairment(s). Obesity in combination with another impairment(s) *may or may not* increase the

severity or functional limitations of the other impairment." SSR 19-2p, 2019 WL 2374244, at *4

(emphasis added); *see also Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020)

("In any event, remand to reconsider her combined impairments is not required because Carter

has relied on the language of SSR 02-1p stating that obesity *can* impair one's ability to perform

basic work activities rather than specifying *how* her obesity or headaches affected her ability to

perform basic work activities" and that the claimant "does not point to any medical evidence that

her impairments, determinable or not, limit her ability to perform work activities") (emphasis in

original); *Woodson*, 661 F. App'x at 765 ("Woodson simply speculates about how his obesity

might exacerbate other impairments—his back disorder, complaints of pain, arthritic knees,

congestive heart failure, asthma attacks, or sleep apnea . . . . But Woodson never points to

specific medical evidence in the record to demonstrate that his obesity, in combination with other

impairments, is sufficiently disabling. Instead, the evidence before the ALJ suggests

otherwise."). Accordingly, Plaintiff, who bears the burden of proof at steps three and four of the

sequential evaluation, has not shown that the ALJ's error, if any, in failing to more thoroughly

discuss Plaintiff's obesity is anything other than harmless error that does not require remand. *See

Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination. . . . [T]he party

seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*,

399 F.3d at 553 (finding that "a remand is not required here because it would not affect the

outcome of the case"); *Abigail L. v. Kijakazi*, No. CV 21-2275, 2022 WL 16362468, at *10

(D.N.J. Oct. 27, 2022) ("[E]ven assuming that Plaintiff is correct that the ALJ's analysis was

18

deficient at steps three and four, Plaintiff fails to demonstrate how further consideration of her obesity would have changed the ALJ's ultimate determination that she was not entitled to benefits."); *Garda v. Comm'r of Soc. Sec.*, No. CV 20-6525, 2022 WL 143169, at *9 (D.N.J. Jan. 17, 2022) ("Plaintiff also does not supply an argument on how obesity may cause her impairments to rise to the level of medical severity required. Although the ALJ found the obesity to be severe, it did not meet the criteria of the listing even when combined with other impairments. . . . The Court finds it important to note that Plaintiff's medical records indicate a history of obesity. . . . Moreover, no medical professional has directly attributed Plaintiff's obesity with exacerbating any of her conditions.") (citations omitted).

Plaintiff further challenges the ALJ's consideration of obesity, contending that the ALJ's discussion at steps two and three is contradictory: The ALJ states at step two that Plaintiff's "obesity *likely exacerbates the negative effects* stemming form his other physical impairments[,]" R. 14 (emphasis added), but finds at step three that Plaintiff's "obesity *does not increase the severity of any co-existing or related impairments to the extent that the combination of the impairments meets the requirements of any listing.*" R. 15 (emphasis added); *see also Plaintiff's Moving Brief*, ECF No. 30, pp. 15–17. The Court is not persuaded that these statements are contradictory or that this issue requires remand. "The burden imposed on a claimant at step three is a far more exacting standard than step two's threshold (used to prevent frivolous claims), which requires that a claimant show that she suffers from a 'severe' impairment." *Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 505 (3d Cir. 2005). In other words, the ALJ's finding at step two in this case that Plaintiff's obesity is severe and likely exacerbates limitations flowing from other physical impairments does not establish that his obesity, in combination with any of his other impairments, met or medically equaled a listed impairment, *i.e.*, a finding that his

obesity "does not increase the severity of any co-existing or related impairments *to the extent that the combination of the impairments meets the requirements of any listing*." R. 14–15.

In continuing to challenge the ALJ's step three determination, Plaintiff contends that the ALJ did not adequately consider his diabetes, specifically complaining that the ALJ failed to reference SSR 14-2p. *Plaintiff's Moving Brief*, ECF No. 30, pp. 10–13, 17. Plaintiff's arguments are not well taken. As detailed above, the ALJ found at step two that, *inter alia*, Plaintiff's diabetes was severe and explained at step three with citation to the medical record why this impairment did not meet or medically equal Listing 9.00B5. R. 14–15. Notably, Plaintiff does not explain how this impairment and any related symptoms meet or medically equal the requirements of that Listing. *See generally Plaintiff's Moving Brief*, ECF No. 30; *cf. Shinseki*, 556 U.S. at 409–10. To the extent that Plaintiff complains that the ALJ failed to consider his diabetes in combination with his other impairments, this argument is unavailing for the reasons previously discussed. In addition, although Plaintiff complains that the ALJ failed to reference SSR 14-2p, which addresses diabetes mellitus, this failure is not fatal. Notably, the ALJ was not required to expressly mention this ruling—or any other Social Security Ruling—in her decision. *See Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003) ("While it is true that the ALJ's written opinion does not cite to Social Security Ruling 99–2p, *we are not aware of any duty which requires ALJs to specifically mention relevant Social Security Rulings when rendering a decision on an individual's claim for Social Security benefits*. More importantly, the ALJ's analysis by and large comported with the approach set forth in Social Security Ruling 99–2p.") (emphasis added); *Martinez v. Colvin*, No. 3:14-CV-1090, 2015 WL 5781202, at *13 (M.D. Pa. Sept. 30, 2015) ("[N]o rule or regulation requires the ALJ to specifically mention relevant Social Security Rulings when rendering a decision."). In any event, Plaintiff has not explained why a

failure to cite to SSR 14-2p requires remand in this case. He simply quotes at length from this ruling without explaining how such citation establishes that the ALJ substantively erred in her step three analysis. *See Plaintiff's Moving Brief*, ECF No. 30, pp. 11–13. The Court will not construct Plaintiff's arguments for him. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

In short, and fairly reading the ALJ's decision as a whole, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's impairments do not meet or medically equal any listing, including Listings 1.02, 4.02, 6.05, 9.00B5, and 11.14, and, in accordance with SSR 02-1p, any other listed impairment.

### B.     RFC

Plaintiff also argues that the ALJ failed to explain the rationale for the RFC for a limited range of sedentary work, thus precluding judicial review. *Plaintiff's Moving Brief*, ECF No. 30, pp. 19–22. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to

consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ

need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554

(3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ

has discretion to choose whether to include "a limitation [that] is supported by medical evidence,

but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ

cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also

has the discretion to include a limitation that is not supported by any medical evidence if the ALJ

finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to

perform a limited range of sedentary work, as follows:

> After careful consideration of the entire record, the undersigned finds that, through
> the date last insured, the claimant had the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can lift a
> maximum of 10 pounds occasionally, and negligible weight on a frequent basis.
> The claimant can sit up to 6 hours, and stand and walk a total of 2 hours in an 8-
> hour day. The claimant is limited to occasional twisting. The claimant is limited to
> jobs that do not require overhead work. The claimant can work with no contact with
> unprotected heights or dangerous machinery. The claimant can bend and climb
> stairs occasionally. Based on pain and side effects of medication, the claimant will
> be off-task 5% of an 8-hour day, and absent one time per month.

R. 15–16. In making this determination, the ALJ considered the medical and opinion evidence,

as well as Plaintiff's hearing testimony that he could lift up to 20 pounds without pain, walk one

mile without pain, walk for approximately 45 minutes to one hour before needing to rest for 10

to 20 minutes, and that he had lightheadedness and dehydration secondary to his kidney

problems; that he had no reported difficulties with activities of personal care; and that he could

prepare meals for himself on a daily basis, perform light housework, shop in stores, and engage

in regular light exercise. The ALJ also considered treatment records that reflect numerous

diabetic foot abnormalities including absent sensation, flexion contractures, pain on palpation,

and hypermobility, but noted that those records do not describe significant limitations in lower extremity strength. Although gait analysis revealed some abnormalities such as foot hypermobility, Plaintiff's gait has always been stable and a March 2015 examination revealed that Plaintiff could walk on heels and toes and tandem walk and he exhibited 5/5 strength in all extremities and had normal deep tendon reflexes in both arms and knees. Although Plaintiff occasionally reported back pain, there were no findings of joint pain or swelling. Other than orthotics, the medical record did not indicate that Plaintiff used other assistive devices for ambulation. Although Plaintiff testified of lightheadedness secondary to kidney disease, the medical record "is essentially negative for complaints of lightheadedness or dizziness during the relevant period[,]" R. 16–17. The ALJ explained how she crafted the limitations in the RFC in light of this evidence, as follows:

> As such, the record as a whole is generally consistent with the claimant's reported ability to perform his activities of daily living independently, and does not suggest physical limitations so severe as to preclude work. *Given the claimant's history of pain and numbness secondary to polyneuropathy and osteoarthritis, in a setting of obesity, diabetes, and kidney disease,* the undersigned has accordingly limited the claimant to sedentary work, taking into consideration the claimant's reported fatigue and lightheadedness.
>
> Due to these aforementioned exacerbating factors, the undersigned has limited the claimant to negligible lifting on a frequent basis. Although the record does not reveal a medically determinable spinal impairment prior to his date last insured, given the claimant's occasionally reported back pain, the undersigned has limited the claimant to occasional twisting and no overhead work.
>
> Due to the claimant's lower extremity loss of sensation and alleged lightheadedness and fatigue, the undersigned has further limited the claimant to work requiring no contact with unprotected heights or dangerous machinery.  Additionally, out of caution, and in consideration of the claimant's complaints of pain, lightheadedness, and report of medication-related dizziness, the undersigned finds that the claimant would be off task 5% of an 8-hour day and absent one time per month.

R. 17–18 (emphasis added). In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at

554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges the ALJ's RFC determination. To the extent that Plaintiff complains that the ALJ did not properly consider his obesity when crafting the RFC. However, that argument fails for the reasons previously discussed: the ALJ expressly considered Plaintiff's obesity together with his other physical impairments and explained how she accommodated any limitations flowing from the combination of all those impairments. R. 16–18. Notably, although Plaintiff appears to suggest that the ALJ failed to accommodate his fatigue, pain, and "obvious, recited limitations detailed in the medical evidence"—without any citation to the record— Plaintiff fails to identify any different or additional restrictions that the ALJ should have included to accommodate his fatigue, pain, and alleged limitations otherwise unidentified by Plaintiff. *Plaintiff's Moving Brief*, ECF No. 30, p. 22; *see also Shinseki*, 556 U.S. at 409–10.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 11, 2024                                *s/Norah McCann King*
                                              NORAH McCANN KING
                                              UNITED STATES MAGISTRATE JUDGE